1   CHRISTOPHER A. NEDEAU (NO. 81297)
     NOSSAMAN LLP
2   50 California Street
     San Francisco, CA 94111
3   Telephone: (415) 398-3600
     Facsimile: (415) 398-2438
4   CNedeau@nossaman.com

5   DENNIS P. RIORDAN (NO. 69320)
     Riordan & Horgan
6   523 Octavia Street
     San Francisco, CA 94102
7   Telephone: (415) 431-3472
     Facsimile: (415) 552-2703
8   Dennis@riordan-horgan.com

9   KIRK C. JENKINS (NO. 177114)
     SEDGWICK, DETERT, MORAN & ARNOLD LLP
10  One North Wacker Drive, Suite 4200
     Chicago, IL 60606-2841
11  Telephone: (312) 641-9050
     Facsimile: (312) 641-9530
12  Kirk.Jenkins@sdma.com

13  Attorneys for Defendants AU OPTRONICS
     CORPORATION and AU OPTRONICS CORPORATION
14  AMERICA

15               UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17

18

19  UNITED STATES OF AMERICA,       Case No. CR-09-0110 (SI)

20           Plaintiff,        **OPPOSITION OF DEFENDANTS AU**
                          **OPTRONICS CORPORATION AND AU**
21     v.                      **OPTRONICS CORPORATION AMERICA**
                          **TO GOVERNMENT'S MOTION FOR**
22  AU OPTRONICS CORPORATION, et al.,  **BIFURCATION AND ORDER REGARDING**
                          **FACT FINDING FOR SENTENCING**
23          Defendants.

24                           Date: July 15, 2011
                           Time: 11:00 a.m.
25                           Judge: Hon. Susan Illston
                           Place: Courtroom 10, 19th Floor

26

27

28

259034_3.DOC                                             Case No. CR-09-0110 SI

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

# TABLE OF CONTENTS

**Page**

I.   ARGUMENT............................................................................................................2

A.   BIFURCATION WILL NOT LESSEN THE BURDEN ON THE
     COURT, PARTIES AND WITNESSES .......................................................2

     1.   The Economic Evidence Which is Relevant and Admissible on
          the Merits .......................................................................................3

          a.   AUO's Transactional and Business Data...............................3

          b.   Structural Information...........................................................5

          c.   Enforcement............................................................................6

          d.   The *Nippon Paper* Intent Test .............................................6

          e.   The FTAIA ..............................................................................6

     2.   The Evidence Which The Government Claims Is Relevant Only
          to The Proposed Penalty Phase .......................................................7

B.   BIFURCATION WOULD SUBSTANTIALLY PREJUDICE THE
     DEFENDANTS' RIGHT TO TRIAL BY JURY ...........................................8

C.   ALL FACTS NECESSARY TO IMPOSE AN ALTERNATIVE FINE
     IN EXCESS OF THE STATUTORY MAXIMUM MUST BE
     DETERMINED BY A JURY TO BEYOND A REASONABLE DOUBT ........9

     1.   The *Apprendi* Rule Requires That Gain or Loss Must Be Decided
          By a Jury and Proven to Beyond a Reasonable Doubt ......................10

     2.   The Supreme Court's *Dicta* in *Ice* Is Not to the Contrary ...............12

     3.   The Ninth Circuit Has Recognized the Broad Sweep of the
          *Apprendi* Rule.................................................................................13

     4.   The Government Fails to Distinguish *LaGrou* and *Pfaff*....................14

II.  CONCLUSION......................................................................................................15

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Animal Science Prods., Inc. v. China Natl. Metals & Minerals Import & Export Corp.,*
  702 F.Supp. 2d 320 (D.N.J. 2010) .................................................................. 6

*Apprendi v. New Jersey,*
  530 U.S. 466 (2000) .......................................................................... passim

*Blakely v. Washington,*
  542 U.S. 296 (2004) ........................................................................ 8, 11, 14

*Blomkest Fertilizer, Inc. v. Potash Crop. Of Saskatchewan,*
  203 F.3d 1028 (8th Cir. 2000) ................................................................... 6

*Continental Baking Co. v. United States,*
  281 F.2d 137 (6th Cir. 1960) .................................................................... 4

*Cunningham v. California,*
  549 U.S. 270 (2007) .......................................................................... 11, 12

*Dee-K Enterprises v. Heveafil SDN, BHD,*
  299 F.3d 281 (4th Cir. 2002) ................................................................... 6

*Dillon v. United States,*
  130 S. Ct. 2683 (2010) .......................................................................... 13

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004) ............................................................................. 6

*F. J. Hanshaw Enters. v. Emerald River Dev., Inc.,*
  244 F.3d 1128 (9th Cir. 2001) .................................................................. 9

*Forro Precision, Inc. v. IBM,*
  673 F.2d 1045 (9th Cir. 1982) .................................................................. 8

*Hartford Fire Ins. Co. v. Calif.,*
  509 U.S. 764 (1993) ............................................................................. 6

*In re Flat Glass Antitrust Litigation,*
  385 F.3d 350 (3d Cir. 2004) .................................................................... 5

*In re High Fructose Corn Syrup Antitrust Litigation,*
  295 F.3d 651 (7th Cir. 2002) ................................................................... 5

*In re Polypropylene Carpet Antitrust Litig.,*
  93 F.Supp.2d 1348 (N.D.Ga. 2000) ............................................................. 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  2010 WL 2610641 (N.D. Cal. 2010) .............................................................. 6

*In re United States fin. Sec Litig.,*
  609 F.2d 411 (9th Cir. 1979) ................................................................... 8

*In re Winship,*
    397 U.S. 358 (1970)..................................................................................... 8

*Jacob Blinder & Sons, Inc. v. Gerber Prods. Co. (In re Baby Food Antitrust Litig.),*
    166 F.3d 112 (3d Cir. 1999) ....................................................................... 6

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.,*
    190 F.3d 775 (7th Cir. 1999) ..................................................................... 6

*Kruman v. Christie' Intl., PLC,*
    284 F.3d 384 (2d Cir. 2002) ..................................................................... 6

*Kurcharski v. Woodford,*
    2008 WL 1901001 (N.D. Cal. 2008) ....................................................... 14

*Leon v. Kirkland,*
    403 Fed. Appx. 268 (9th Cir. 2010).......................................................... 14

*Oregon v. Ice,*
    555 U.S. 160, 129 S. Ct. 711 (2009)................................................ 9, 12, 13

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,*
    998 F.2d 1224 (3d Cir. 1993) .................................................................. 5, 6

*Ross v. Bernhard,*
    396 U.S. 531 (1970)................................................................................... 9

*San Francisco Natl. Association for the Advancement of Colored People v. San Francisco Unified
School Dist.,*
    284 F.3d 1163 (9th Cir. 2002) ................................................................. 13

*Turicentro, S.A. v. American Airlines, Inc.,*
    303 F.3d 293 (3d Cir. 2002) ..................................................................... 6

*U.S. Information Sys., Inc. v. Intl. Brotherhood of Elec. Workers Loc. Union No. 3,*
    313 F.Supp.2d 213 (S.D.N.Y. 2004) ......................................................... 5

*United Mine Workers v. Bagwell,*
    512 U.S. 821 (1994)................................................................................... 9

*United States v. Andreas,*
    216 F.3d 645 (7th Cir. 2000) ................................................................. 3, 4

*United States v. Andreas,*
    Case No. 96-762 (N.D. Ill.) ....................................................................... 5

*United States v. AU Optronics Corporation,*
    2011 WL 1464858 (N.D. Cal. 2011) ......................................................... 3

*United States v. Baker,*
    10 F.3d 1374 (9th Cir. 1993) ..................................................................... 8

*United States v. Bestway Disposal Corp.,*
    724 F.Supp. 62 (W.D.N.Y. 1988)............................................................... 3

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

*United States v. Booker,*
  543 U.S. 220 (2005)...................................................................................1, 8, 11

*United States v. Buckland,*
  289 F.3d 558 (9th Cir. 2002) ....................................................................14

*United States v. Continental Group, Inc.,*
  603 F.2d 444 (3d Cir. 1979) ......................................................................4

*United States v. Dare,*
  425 F.3d 634 (9th Cir. 2005) ....................................................................16

*United States v. Fischbach and Moore, Inc.,*
  750 F.2d 1183 (3d Cir. 1985) .....................................................................3

*United States v. Johnson,*
  2011 WL 330243 (11th Cir. 2011) ...........................................................14

*United States v. LaGrou Distribution Systems, Inc.,*
  466 F.3d 585 (7th Cir. 2006) .............................................................10, 14

*United States v. Locklin,*
  530 F.3d 908 (9th Cir. 2008) ....................................................................14

*United States v. Mendoza-Zaragoza,*
  567 F.3d 431 (9th Cir. 2009) ....................................................................14

*United States v. Montero-Camargo,*
  208 F.3d 1122 (9th Cir. 2000) ..................................................................13

*United States v. Nippon Paper Indus. Co.,*
  109 F.3d 1 (1st Cir. 1997)........................................................................4, 6

*United States v. Nippon Paper Industries,*
  Case No. 95-10388-NG (D. Mass) ..........................................................4, 5

*United States v. Pfaff,*
  619 F.3d 172 (2nd Cir. 2010)...........................................................10, 14, 15

*United States v. Pike,*
  473 F.3d 1053 (9th Cir. 2007) ..................................................................16

*United States v. Prairie Farms Dairy, Inc.,*
  Case No. EV-94-17 (S.D. Ind.).................................................................4

*United States v. Sawyer,*
  361 Fed. Appx. 96 (11th Cir. 2010).............................................................4

*United States v. Smith, et al.*
  Northern District, Case No. 10-0585 CR...................................................15

*United States v. Southern Union Co.,*
  630 F.3d 17 (1st Cir. 2010)..............................................................9, 14, 15

*United States v. Staten,*
  466 F.3d 708 (9th Cir. 2006) ....................................................................16

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

*United States v. Sullivan,*
   585 F.2d 7 (9th Cir. 1979) ........................................................................................ 8

*United States v. Swanson,*
   Case No. CK 06-0692 PJH (N.D. Cal. Feb. 22, 2008) ........................................... 4

*United States v. Therm-All, Inc.,*
   373 F.3d 625 (5th Cir. 2004) .................................................................................. 3

*United States v. United States Gypsum Co.,*
   438 U.S. 422 (1978)................................................................................................. 3

*United States v. West Coast Aluminum Heat Treating Co.,*
   265 F.3d 986 (9th Cir. 2001) ................................................................................ 13

*Williamson Oil Co., Inc. v. Philip Morris USA,*
   346 F.3d 1287 (11th Cir. 2003) ............................................................................. 5

**Statutes**

18 U.S.C. § 3571(d) ........................................................................................ 7, 10, 14

Federal Rules of Criminal Procedure,
   Section 3571 ........................................................................................... 1, 14, 15

**Other Authorities**

2A Charles Alan Wright & Peter J. Henning,
   Federal Practice and Procedure § 403 (June 2011)............................................... 14

3 Charles Alan Wright & Peter J. Henning,
   Federal Practice and Procedure § 545 (June 2011)............................................... 12

Antitrust Modernization Commission Act of 2002,
   Pub. Law No. 107-273, §§ 11051-60, 116 Stat. 1856 ............................................. 1

Thomas A. Piraino, Jr., "Regulating Oligopoly Conduct Under the Antitrust Laws,"
   89 Minn. L. Rev. 9, 30 (Nov. 2004) ...................................................................... 6

U.S. Sentencing Guidelines,
   § 2R1.1(d)(1) ......................................................................................................... 7

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

## MEMORANDUM OF POINTS AND AUTHORITIES

The government seeks bifurcation, and argues it need not prove gain or loss from the purported conspiracy to the jury beyond a reasonable doubt pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The government's argument is contrary to testimony the Department of Justice provided to the federal Antitrust Modernization Commission.[1]

Scott D. Hammond, Deputy Assistant Attorney General for Criminal Enforcement in the Antitrust Division, testified: "[I]f we seek a fine above $100 million . . . post-*Booker* . . . we are going to have to prove to a jury beyond a reasonable doubt . . . You know, sure as I'm sitting here, I'm sure one day we will have to do it."[2] According to Hammond, he was "present[ing] the views of the Department of Justice" during his testimony and prepared statement.[3] As a result, the Commission concluded in its report: "The DOJ acknowledges that it must prove to a jury, beyond a reasonable doubt, the gain or loss used to establish a high maximum fine under Section 3571(d)."[4] Hammond repeated the same point again in 2005 before the ABA Section on Antitrust Law.[5]

As Deputy Assistant Attorney General Hammond has repeatedly recognized, *Apprendi* and its progeny require the government to prove any facts relating to gain or loss from the alleged conspiracy to the jury beyond a reasonable doubt.

---

[1] The Commission was established pursuant to the Antitrust Modernization Commission Act of 2002, Pub. Law No. 107-273, §§ 11051-60, 116 Stat. 1856. The Commission consists of twelve members, four appointed by the President and four each by the Senate and House leadership. The Commission was charged by Congress with the responsibility to examine whether the need exists to modernize the antitrust laws, to identify and study related issues, and to report to Congress and the President. *Id.* at § 11053.

[2] Hammond Testimony, Antitrust Modernization Commission, Nov. 3, 2005, at p. 38 (Attached as Exhibit 1); *see* "Statement of Scott D. Hammond on Behalf of the United States Department of Justice," Antitrust Modernization Commission Hearings on Criminal Remedies, Nov. 3, 2005, p. 14 (Attached as Exhibit 2); *see also* Scott D. Hammond, "The U.S. Model of Negotiated Plea Agreements: A Good Deal With Benefits for All," Address to OECD Competition Working Party No. 3, Oct. 17, 2006 (attached as Exhibit 3) ("If the plea agreement contains a recommended sentence above the statutory maximum, then it will include a statement that had the case gone to trial, the government would have presented evidence to prove that the gain or loss resulting from the charged offense is sufficient to justify the recommended fine").

[3] Hammond Testimony, Antitrust Modernization Commission, Nov. 3, 2005 (Exh. 1 hereto) at p. 5; Hammond Statement, (Exh. 2 hereto), at cover page.

[4] Report and Recommendations, Antitrust Modernization Commission, p. 299 (Attached as Exhibit 4).

[5] Scott D. Hammond, "Antitrust Sentencing in the Post-*Booker* Era: Risks Remain High for Non-Cooperating Defendants," Address to Amer. Bar Assoc., Sec. of Antitrust Law, Mar. 30, 2005 (Attached as Exhibit 5) ("After *Blakely*, the Division began to include in indictments sentencing factors, i.e., allegations supporting Guidelines calculations, and we are prepared to prove those allegations to a jury beyond a reasonable doubt.")

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

The government's motion is in reality a motion *in limine* designed to deprive the defendants – both the corporate defendants as well as the five individuals – of their Sixth Amendment rights by barring the very evidence which the defendants will offer at trial to show that they never agreed to fix prices.

The government's motion should be seen for what it is and denied:

- The "economic effects" evidence the government seeks to bar is directly relevant to a host of issues that go to the core of the government's burden of proof, including: (1) whether the defendants agreed to fix prices with a present intent to abide by their purported agreement; (2) whether the defendants intended, by their alleged conduct, to cause substantial effects in the U.S. economy; and (3) whether the defendants' conduct "involved import trade or commerce" within the meaning of the Foreign Trade Antitrust Act ("FTAIA"); and

- Because of the degree of overlap between the merits and any calculation of loss or gain, bifurcation would mean that several lay and expert witnesses would have to testify and be cross-examined twice.

In order to resolve the government's allegations that defendants entered into a price-fixing conspiracy, the jury will be required to hear a large volume of lay and expert economic testimony. The government makes no showing that any specific evidence will be relevant solely to its proposed penalty phase, and even if there were such evidence, criminal juries are routinely instructed not to take anything relating to punishment into account in determining the guilt or innocence of the defendant. *E.g., Ninth Circuit Manual of Model Criminal Jury Instructions,* No. 7.4 (2010 ed.); ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases,* No. 4.D.8 (2009 ed.) For that reason, bifurcation as requested by the government would accomplish nothing.

The government's motion should be denied.

## I.    ARGUMENT

### A.    BIFURCATION WILL NOT LESSEN THE BURDEN ON THE COURT, PARTIES AND WITNESSES

The government's motion to bifurcate contains a telling omission.

Aside from a vague and conclusory reference to "effects evidence" – "testimony and economic evidence on the pecuniary effects of the price-fixing agreement" – the government never explains what specific evidence, in its view, is relevant solely to the proposed penalty phase and not to the merits. Thus, the government never shows how any time or effort will be saved by bifurcation.

The defendants are aware of no evidence at all which is relevant solely to the gain or loss calculation, and not to the merits. Bifurcation will save no time or resources, and it should be denied.

### 1.    The Economic Evidence Which is Relevant and Admissible on the Merits

A host of transactional and structural data will be admissible in AUO's case-in-chief.

#### a.    AUO's Transactional and Business Data

AUO's actual transactional prices, quantities produced, and profit margins will be admissible. As the Supreme Court has recognized, "a defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences therefrom." *United States v. United States Gypsum Co.*, 438 U.S. 422, 435 (1978). A showing of intent involves not merely "the basic intent to agree," but also "intent to effectuate the object of the conspiracy." *Id.* at 443, n. 20. This Court recognized the government's burden in its April 18, 2011 order, holding that the government must "plead and prove . . . that the defendant knowingly – that is, voluntarily and intentionally – became a member of the conspiracy charged in the indictment, knowing of its goals and intending to help accomplish it . . ." *United States v. AU Optronics Corporation*, 2011 WL 1464858, *4 (N.D. Cal. 2011).

Several courts have agreed with this Court's analysis, holding that the government must prove beyond a reasonable doubt that the defendant intended, at the time the defendant purportedly agreed to participate, to help accomplish the goal of the alleged conspiracy.

For example, in *United States v. Andreas,* 216 F.3d 645 (7th Cir. 2000), the court held that "a defendant who pretended to agree but did not intend to honor the agreement could not be convicted of a crime." *Id.* at 669. The court approved an instruction that "[i]f the jury had a reasonable doubt whether [defendants] intended to abide by the agreement," defendants could not be convicted of a criminal antitrust violation. *Id., citing United States v. Bestway Disposal Corp.*, 724 F.Supp. 62, 67 (W.D.N.Y. 1988); *accord, United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004); *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1191 (3d Cir. 1985) (no conviction without proof of "intent

1 to effectuate the object of the conspiracy"); *United States v. Continental Group, Inc.*, 603 F.2d 444, 463

2 (3d Cir. 1979) (conviction requires proof of "intent to further or advance some objective or purpose of

3 the conspiracy").

4      Pursuant to these principles, courts have recognized that economic evidence that prices were the

5 result of non-conspiratorial factors is relevant and admissible. *Continental Baking Co. v. United States*,

6 281 F.2d 137, 142-44, 146 (6th Cir. 1960); *see also United States v. Sawyer*, 361 Fed. Appx. 96, 103

7 (11th Cir. 2010) (extrinsic acts relevant to whether defendant participated in conspiracy). Similarly,

8 courts have repeatedly admitted evidence of defendants' actual prices and competitive practices for its

9 relevance on the issue of whether defendants participated in a conspiracy with the necessary intent. For

10 example, in *United States v. Swanson,* Judge Hamilton instructed the jury as follows:

11           Evidence that the DRAM manufacturers actually competed with other

12           manufacturers of DRAM has been admitted to assist you in deciding whether they

13           actually entered into an agreement or mutual understanding to fix prices and

14           whether the defendant joined and participated in that conspiracy . . .

15           Evidence of the prices actually charged by the companies manufacturing DRAM

16           alleged to have been part of the conspiracy has been admitted to assist you in

17           deciding whether they entered into or continued to participate in an agreement or

18           mutual understanding to fix prices and whether the defendant joined that

19           conspiracy. Such evidence may lead you to conclude that the defendant never

20           entered into the agreement charged in the indictment, or it may show that he made

21           an agreement but failed to live up to it, or started undercutting the other way, or

22           offered prices lower than those agreed upon to customers he did not want to lose,

23           or it may show that he became convinced that the whole scheme was unwise and

24           should be abandoned.

25 (Transcript of Record at 2293-94, *United States v. Swanson*, Case No. CK 06-0692 PJH (N.D. Cal. Feb.

26 22, 2008) (Attached as Exhibit 6 hereto.)

27      Similar instructions were given in *United States v. Prairie Farms Dairy, Inc., United States v.*

28 *Andreas and United States v. Nippon Paper Industries.* Transcript of Record at 1777-78, *United States*

1  *v. Prairie Farms, Inc.*, Case No. EV-94-17 (S.D. Ind.) (Attached as Exhibit 7 hereto); Transcript of

2  Record at 5586-87, *United States v. Andreas*, Case No. 96-762 (N.D. Ill.) (Attached as Exhibit 8 hereto);

3  and Transcript of Record at 2134, *United States v. Nippon Paper Indus.*, Case No. 95-10388-NG

4  (D.Mass.) (Attached as Exhibit 9 hereto) ("You may consider evidence of the prices that were set in

5  determining whether there was an agreement in the first place").

6  ### b.    Structural Information

7      Information and testimony about the concentration of the TFT-LCD industry, product

8  differentiation, product fungibility, buyer concentration, sophistication, information, and the percentage

9  of consumer-use end product price accounted for by TFT-LCD panels will be admissible.

10      For a generation, Federal courts in antitrust cases have routinely admitted expert testimony

11  explaining the structure of the relevant industry, describing what structural features are regarded by

12  economists as conducive and not conducive to cartelization, and opining as to whether such structural

13  features are present in the case at hand.  *E.g., In re Flat Glass Antitrust Litigation*, 385 F.3d 350, 361 (3d

14  Cir. 2004) (testimony about market concentration, undifferentiated product, competition solely on price,

15  demand declining and excess capacity); *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287,

16  1317 (11th Cir. 2003) (testimony about inelastic demand, fungible product, concentration of sellers); *In*

17  *re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 656-57 (7th Cir. 2002) (buyer

18  concentration, seller concentration, limited grades of an undifferentiated product with no close

19  substitutes, a public, easily observable pricing mechanism); *Petruzzi's IGA Supermarkets, Inc. v.*

20  *Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1236 (3d Cir. 1993) (undifferentiated product with the only

21  competition on price); *U.S. Information Sys., Inc. v. Intl. Brotherhood of Elec. Workers Loc. Union No.*

22  *3*, 313 F.Supp.2d 213, 240-41 (S.D.N.Y. 2004) (allowing expert to testify to structural factors that would

23  be conducive to collusion, whether the evidence showed the existence of such factors, and what their

24  economic significance would be); *In re Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348, 1353-

25  54 (N.D.Ga. 2000)(seller concentration, barriers to entry, product differentiation, technological

26  development, market share).

27

28

### c.     Enforcement

Testimony will be admissible about the absence or presence among the TFT-LCD manufacturers of a mechanism to detect and punish "cheating" on the purported price-fixing "agreement."

Courts have recognized for years that economic analysis of markets for the presence or absence of enforcement mechanisms is relevant and helpful to determining whether allegations of a price-fixing cartel are economically plausible. *E.g., Jacob Blinder & Sons, Inc. v. Gerber Prods. Co. (In re Baby Food Antitrust Litig.)*, 166 F.3d 112, 137 (3d Cir. 1999)(cartel doomed to failure without mechanism to detect cheating); *Blomkest Fertilizer, Inc. v. Potash Crop. Of Saskatchewan*, 203 F.3d 1028, 1042-43 (8th Cir. 2000)(same); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 777 (7th Cir. 1999)(same); *Petruzzi's IGA Supermarkets*, 998 F.2d 1224, 1233 (same); *see* Thomas A. Piraino, Jr., "Regulating Oligopoly Conduct Under the Antitrust Laws," 89 Minn. L. Rev. 9, 30 (Nov. 2004).

### d.     The *Nippon Paper* Intent Test

Information and testimony will be admissible as to whether or not the defendants' alleged conduct had an "intended and **substantial** effect in the United States" within the meaning of *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 9 (1st Cir. 1997), *Hartford Fire Ins. Co. v. Calif.*, 509 U.S. 764 (1993) (emphasis added), and *Dee-K Enterprises v. Heveafil SDN, BHD*, 299 F.3d 281 (4th Cir. 2002) ("Courts have consistently required a showing of effect on United States commerce even in cases involving price fixing on imports").

### e.     The FTAIA

Information and testimony will be admissible as to whether or not the defendants were the "main force" in bringing any TFT-LCD panels into the United States so as to amount to "conduct involving import trade or commerce" within the meaning of the FTAIA.[6]

To the extent the DOJ chooses to dispute the admissibility of any of this evidence, the proper vehicle to do that is one or more fully briefed motions *in limine*, not a motion to bifurcate which is, *at best*, wildly premature.

---

[6] *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 303 (3d Cir. 2002); *Kruman v. Christie' Intl., PLC*, 284 F.3d 384, 395 (2d Cir. 2002), *abrogated on another point, F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2610641, **4-5 (N.D. Cal. 2010); *Animal Science Prods., Inc. v. China Natl. Metals & Minerals Import & Export Corp.*, 702 F.Supp. 2d 320, 372-73 (D.N.J. 2010).

1

2.    **The Evidence Which The Government Claims Is Relevant Only to The Proposed Penalty Phase**

2

3       In contrast, one looks almost entirely in vain for a detailed explanation from the government of

4    what "effects evidence" it believes will not have to be presented in an initial guilt phase if the trial is

5    bifurcated.  The sole clue is the government's passing comment about "dueling expert testimony

6    involving multivariate regression analyses" which will supposedly "discombobulate the jury." (Govt.

7    Mem, p. 4.)

8       It should be noted that although the alternative fines statute, 18 U.S.C. § 3571(d), provides for a

9    fine equal to twice the gross gain or loss from the alleged offense, the Sentencing Guidelines provide

10    that in lieu of that calculation, a proxy may be used for the base fine of twenty percent of the volume of

11    commerce affected by the violation.  U.S. Sentencing Guidelines, § 2R1.1(d)(1).  Thus, leaving aside the

12    question of the validity of the 20% presumption in the Guidelines – an issue the defendants will

13    aggressively litigate when and if the time ever comes – the defendants gravely doubt whether the

14    government has the slightest intention at this time of offering a "multivariate regression analysis" if it

15    should be permitted a bifurcated sentencing phase.

16       But even if the government were to offer such a regression equation in its proposed sentencing

17    phase, bifurcation will save virtually no time or resources at all.  The government's proposed profit/loss

18    regression would involve exactly the same data which the jury will already have heard in a guilt phase –

19    AUO's prices, quantities, profits and costs.

20       Nevertheless, the government complains that limiting instructions would "yield complicated and

21    seemingly contradictory guidance that risks further confusing jurors." (Opp., p. 4.)  The court would

22    need to instruct the jury at the close of evidence "in an attempt to clarify which evidence can be

23    considered on the price-fixing charge." (*Id.* at 5.)

24       Given that the government never explains what evidence, in its view, would be relevant only to

25    penalty, its concern that the evidence will confuse the jury is not well taken.  Juries are frequently asked

26    to weigh complex economic evidence – often as part of routine civil damages and punitive damages

27    calculations – and the government's position that the jury will somehow be unable to do so

28    "unnecessarily and improperly demeans the intelligence of the citizens of this Nation." *In re United*

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

1   *States fin. Sec Litig.,* 609 F.2d 411, 429-31 (9th Cir. 1979). Particularly given the relatively paucity of

2   evidence relevant solely and exclusively to penalty, any possible confusion can easily be remedied

3   through limiting instructions. *Forro Precision, Inc. v. IBM,* 673 F.2d 1045, 1047 (9th Cir. 1982); *United*

4   *States v. Sullivan,* 585 F.2d 7, 8-9 (9th Cir. 1979) ("[O]ur whole jury system is based upon the

5   recognized ability of the jury to follow the court's instructions.") *United States v. Baker,* 10 F.3d 1374,

6   1388 (9th Cir. 1993), cited by the government, where the court's giving of more than *two hundred*

7   limiting instructions was held to support a denial of severance, is not to the contrary.

8            Far from reducing the burden on the court, parties and jury, bifurcation would save no time or

9   resources, given the large amount of economic evidence which will be relevant and admissible with

10  respect to guilt. The government's motion should be denied.

11       **B.    BIFURCATION WOULD SUBSTANTIALLY PREJUDICE THE DEFENDANTS'
            RIGHT TO TRIAL BY JURY**

12

13           Settled law holds that the Constitution "protects every criminal defendant 'against conviction

14  except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

15  he is charged.'" *United States v. Booker,* 543 U.S. 220, 230 (2005), *quoting In re Winship,* 397 U.S.

16  358, 364 (1970). The right to a jury trial "is no mere procedural formality, but a fundamental

17  reservation of power in our constitutional structure." *Blakely v. Washington,* 542 U.S. 296, 304-06

18  (2004).

19           The government's motion seeks to strip the defendants of their Sixth Amendment jury trial rights

20  by barring the jury from hearing the cornerstones of their defense during the proposed guilt phase of the

21  trial. Given that the individual defendants have spent more than a year in this country, far from their

22  homes, their families and their professional lives, for the express purpose of obtaining a jury trial of the

23  government's spurious allegations, the government's motion is cynical in the extreme. "[T]he very

24  reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust

25  government to mark out the role of the jury." *Blakely,* 542 U.S. at 308.

26           The government's motion to bifurcate the trial has no support in the facts or the law, and should

27  be denied.

28

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

1    **C.    ALL FACTS NECESSARY TO IMPOSE AN ALTERNATIVE FINE IN EXCESS OF THE STATUTORY MAXIMUM MUST BE DETERMINED BY A JURY TO**
2    **BEYOND A REASONABLE DOUBT**

3    According to the government, regardless of when the issue is adjudicated, the Court, rather than

4    the jury, should decide the amount of the alleged gain or loss, applying a preponderance of the evidence

5    standard. (Govt. Mem., p. 6.)  The government acknowledges the rule of *Apprendi*, 530 U.S. at 490,

6    where the Supreme Court held in sweeping terms that any fact that increases a criminal penalty beyond

7    the prescribed statutory maximum must be proven to a jury beyond a reasonable doubt.  Nevertheless,

8    the government insists that the Supreme Court exempted all criminal fines from the *Apprendi* rule in

9    *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 719 (2009), when it commented in *dicta* that trial judges

10   often find facts in the course of determining "statutorily prescribed fines." (Mem., pp. 6-8.)

11   The government fails to acknowledge how radical its position is.  Since a corporation cannot be

12   imprisoned, the government's argument that *Apprendi* does not apply to fines necessarily means that

13   corporations have no Sixth Amendment rights with respect to criminal penalties.  Indeed, given the

14   Supreme Court's holding that there is no difference of constitutional significance in many cases between

15   an "element" and a "sentencing factor," *Apprendi*, 530 U.S. at 490, the government's position comes

16   perilously close to a claim that corporations have no Sixth Amendment rights at all.  *See United Mine*

17   *Workers v. Bagwell*, 512 U.S. 821, 837-38 (1994)(union entitled to jury trial in connection with $52

18   million fine); *F. J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1141 (9th Cir. 2001)

19   (defendant entitled to jury trial in connection with $500,000 fine); *see also Ross v. Bernhard*, 396 U.S.

20   531, 533-34 (1970)(corporations have jury trial right in civil cases).

21   Leaving that aside, however, the government is wrong on the law.  The rule of *Apprendi* applies

22   to *any* penalty in excess of the statutory maximum.  The Supreme Court has reaffirmed the *Apprendi*

23   rule repeatedly, both before and after *Ice*.  Nothing in *Ice* is to the contrary – indeed, the Court

24   reaffirmed the *Apprendi* rule in *Ice* itself.  The Ninth Circuit has repeatedly recognized the broad scope

25   of the *Apprendi* rule as well.  *Infra* at 16-17, and authorities cited there.

26   Despite controlling Supreme Court and Ninth Circuit authority, the government urges the Court

27   to follow the First Circuit's recent decision in *United States v. Southern Union Co.*, 630 F.3d 17 (1st Cir.

28   2010) and disregard those courts' decisions, as well as the decisions of the Second and Seventh Circuits,

1   *United States v. Pfaff*, 619 F.3d 172 (2nd Cir. 2010) and *United States v. LaGrou Distribution Systems,*

2   *Inc.*, 466 F.3d 585 (7th Cir. 2006), both of which rejected the government's attempt to limit the scope of

3   *Apprendi*.

4       In fact, *Pfaff* and *LaGrou* are on point. Both cases involve the statute at issue here, 18 U.S.C. §

5   3571(d). The government misconstrues the decision in *Southern Union,* and that case is distinguishable

6   on its facts.

7       The maximum fine permitted by statute if the government obtains a conviction on the Indictment

8   is $100,000,000 for each of the corporate defendants, and $1,000,000 for each individual. Given the

9   government's determination to seek a fine in excess of those amounts pursuant to the alternative fine

10  statute, 18 U.S.C. § 3571(d), the government is required by *Apprendi* to prove the purported gain or loss

11  arising from any offense to the jury and beyond a reasonable doubt.

### 1.  The *Apprendi* Rule Requires That Gain or Loss Must Be Decided By a Jury and Proven to Beyond a Reasonable Doubt

14      *Apprendi* involved the issue of whether a defendant's sentence in connection with a firearms

15  offense could be increased beyond the statutory maximum based upon the trial judge's factual

16  determination to a preponderance of the evidence that defendant had acted with an intent to intimidate

17  the victims based on race. *Apprendi*, 530 U.S. at 468-69. The Supreme Court held that such judicial

18  fact-finding was contrary to the Sixth Amendment.

19      Since well before the Nation's founding, the Supreme Court explained, the maximum

20  permissible sentence had depended upon the facts proven to a jury beyond a reasonable doubt. The law

21  had long recognized that a defendant was entitled to be able to "predict with certainty the judgment from

22  the face of the indictment." *Id.* at 478. If a statute attached "a higher degree of punishment to a

23  common law felony" when the crime was committed under certain circumstances, the necessary facts

24  had to be alleged in the indictment and proven to the jury. *Id.* at 480-81.

25      The Court drew a clear line between facts necessary to *increase* a sentence beyond the statutory

26  maximum and fact-finding in connection with lower penalties:

27          [N]othing in this history suggests that it is impermissible for judges to exercise

28          discretion – taking into consideration various factors relating both to offense and

---

259034_3.DOC                                    10                          Case No. CR-09-0110 SI

offender – in imposing a judgment *within the range* prescribed by statute . . .

[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed *within limits fixed by law.*

*Id.* at 481 (Emphasis in original, internal quotations omitted).

The Court relied upon this long-standing history to pronounce its bright-line rule: "[I]t is unconstitutional . . . to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* at 490.

The Supreme Court has consistently reaffirmed *Apprendi*. In *Ring v. Arizona,* 536 U.S. 584, 589, 609 (2002), the Court found that "If the State makes an increase in a defendant's authorized punishment contingent on the finding of a fact – that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." In *Blakely v. Washington, supra,* 542 U.S. 296, the Court wrote that *Apprendi* reflected "the need to give intelligible content to the right of jury trial by ensuring that the judge's authority to sentence derives wholly from the jury's verdict." *Id.* at 305-06. "When a judge inflicts punishment that the jury's verdict alone does not allow," the Court held, "the jury has not found all the facts 'which the law makes essential to the punishment' . . . and the judge exceeds his proper authority." *Id.* at 304.

The following year, in *United States v. Booker, supra,* 543 U.S. 220, the Court pointed once again to the distinction between factual determinations involved in a sentence *below* the statutory maximum, and facts necessary to *exceed* the maximum. "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range," the Court wrote. *Id.* at 233. Nevertheless, "we reaffirm our holding in *Apprendi*." *Id.* at 244.

The Court reiterated the same distinction in *Cunningham v. California,* 549 U.S. 270 (2007). "This Court has repeatedly held that any fact that exposes a defendant to a greater potential sentence must be found by a jury . . . and established beyond a reasonable doubt," the Court noted. *Id.* at 281.

1   Striking down a determinate sentencing law, the Court found that states had two constitutionally

2   permissible options: allow juries to find any facts necessary to increase the sentence beyond the

3   statutory maximum, or "permit judges genuinely to exercise broad discretion *within a statutory range,*

4   which, everyone agrees, encounters no Sixth Amendment shoal." *Id.* at 294. (emphasis added, internal

5   quotation marks omitted).

6            **2.        The Supreme Court's *Dicta* in *Ice* Is Not to the Contrary**

7            Despite the clarity and consistency of the Court's holdings and reasoning from *Apprendi* to

8   *Cunningham,* the government would have the court believe that the Supreme Court abruptly repudiated

9   its own analysis in *Oregon v. Ice, supra,* 129 S. Ct. 711.  Not so.

10           *Ice* did not involve the issue which drove *Apprendi,* its progeny, and is presented by the

11  government's motion here – whether a defendant's sentence for a single offense could be increased

12  beyond the statutory maximum based upon facts found only by the judge to a preponderance of the

13  evidence. Indeed, the *Ice* Court restated the *Apprendi* rule, casting no doubt on its vitality at all. *Id.* at

14  716.  Rather, *Ice* posed the analytically distinct issue of judges' discretion to determine whether

15  sentences for *multiple* offenses should be served consecutively or concurrently. *Id.* at 714.

16           The government's argument rests on the following *dicta*:

17                   As 17 States have observed in an *amici* brief supporting Oregon, States

18                   currently permit judges to make a variety of sentencing determinations . . .

19                   Trial judges often find facts about the nature of the offense or the

20                   character of the defendant in determining, for example, the length of

21                   supervised release following service of a prison sentence; required

22                   attendance at drug rehabilitation programs or terms of community service;

23                   and the imposition of *statutorily prescribed fines* and orders of restitution.

24                   See Brief for State of Indiana et al. as *Amici Curiae* 11.

25  *Id.* at 719 (Emphasis added).

26           According to the government, the Court thus exempted all criminal fines from the *Apprendi* rule.

27  The government is wrong.[7]

28  _____

[7]  *See* 3 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 545 (June 2011) (Noting

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

First, although lower Federal courts accord *dicta* from the Supreme Court the appropriate

deference, the Supreme Court's *dicta* cannot be taken to overrule its express holdings. *San Francisco*

*Natl. Association for the Advancement of Colored People v. San Francisco Unified School Dist.*, 284

F.3d 1163, 1167-68 (9th Cir. 2002); *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 & n. 17

(9th Cir. 2000).

Second, in *Ice* the Court expressly refers to "statutorily prescribed fines" – sentencing ranges set

by Congress or the legislature.[8] The *Ice dicta* is thus consistent with the *Apprendi* line of cases, which

as far back as *Apprendi* itself have made the distinction between trial judges' authority to find facts with

respect to sentences within the statutorily prescribed range and judges' lack of authority to find facts

with respect to higher sentences. *Apprendi*, 530 U.S. at 481.

Third, as noted above, *Ice* involved sentencing for multiple offenses, not an enhanced fine for a

single offense.

The Supreme Court applied *Apprendi* yet again eighteen months after *Ice* in *Dillon v. United*

*States*, 130 S. Ct. 2683 (2010). *Dillon* involved a resentencing proceeding pursuant to an amended

Sentencing Guideline. Citing *Apprendi*, the Court found that trial courts had "circumscribed discretion"

to find sentencing facts *so long as* such facts did not cause the sentence to exceed the statutory

maximum. *Id.* at 2692.

### 3.    The Ninth Circuit Has Recognized the Broad Sweep of the *Apprendi* Rule

The Ninth Circuit has recognized the breadth of the *Apprendi* rule.

*United States v. West Coast Aluminum Heat Treating Co.*, 265 F.3d 986 (9th Cir. 2001) involved

a criminal conviction for conspiracy and making false statements. The corporate defendant was fined

based upon a calculation of the loss caused by the conspiracy. *Id.* at 989. The court applied *Apprendi*,

---

that *Southern Union*'s construction of the relevant history "is in direct contrast with the Supreme Court's reasoning in *Apprendi* that the 'English trial judge of the later eighteenth century had very little explicit discretion in sentencing.'")

[8]    In fact, the State *amici*'s point was that courts routinely decide whether to impose fines *as well as* imprisonment on a particular individual defendant. The States were not referring to fact-finding in setting the *amount* of a fine. Brief of State of Indiana, *et al., Oregon v. Ice*, 2008 WL 2367232, *11-12 (June 9, 2008).

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

1  rejecting the defendant's challenge only because the amount of the fine was below the statutory

2  maximum for the offense. *Id.* at 994.[9]

3      The following year, an *en banc* Court stated the *Apprendi* rule in the broadest possible terms:

4  "'*Apprendi* compels us to submit to a jury questions of fact that may increase a defendant's exposure to

5  penalties, regardless of whether that fact is labeled an element or a sentencing factor.'" *United States v.*

6  *Buckland,* 289 F.3d 558, 566 (9th Cir. 2002). The Court has continued to describe and apply the

7  *Apprendi* rule in recent years, never suggesting that *Ice* limited the scope of the rule. *E.g., Leon v.*

8  *Kirkland,* 403 Fed. Appx. 268, 269-70 (9th Cir. 2010); *United States v. Mendoza-Zaragoza,* 567 F.3d

9  431, 432 (9th Cir. 2009); *United States v. Locklin,* 530 F.3d 908, 912 (9th Cir. 2008).

10      **4.    The Government Fails to Distinguish *LaGrou* and *Pfaff***

11      As the government acknowledges, two circuits have applied the *Apprendi* rule to criminal fines.

12  Both cases involved the alternative fines statute, 18 U.S.C. § 3571(d), the same statute at issue here.

13      *United States v. LaGrou, supra,* 466 F.3d 585, involved the criminal conviction of a corporation

14  for improper storage of meat products. On appeal, the corporation challenged a $1 million fine under

15  the alternative fine statute on the grounds that the jury had not been asked to find the loss attributable to

16  the conduct to beyond a reasonable doubt under *Apprendi. Id.* at 594. The Seventh Circuit agreed and

17  reversed for resentencing. *Id.*

18      In *United States v. Pfaff, supra,* 619 F.3d 172, the Second Circuit reviewed a fine based upon the

19  trial court's finding of the pecuniary loss arising from a fraudulent tax shelter scheme. The Court

20  reversed the fine, holding that because the alternative fine statute was subject to a statutorily prescribed

21  maximum, the *Apprendi* rule was directly applicable.

22      The government argues that this court should disregard *LaGrou* and *Pfaff* and instead follow the

23  First Circuit's decision in *United States v. Southern Union Co., supra,* 630 F.3d 17. There, the

24  defendant was convicted on federal charges of storing hazardous waste without a permit. The statutorily

---

9   *See* 2A Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 403 (June 2011) ("It is the
clear implication of *Apprendi* and *Blakely* that when a jury does not make a pecuniary gain or loss finding, 18
U.S.C. § 3571's default statutory maximums cap the amount a district court may fine the defendant"); *see
also United States v. Johnson,* 2011 WL 330243, *3 (11th Cir. 2011)(holding that *Apprendi* did not apply
because statute did not increase the criminal fine for a securities violation beyond the otherwise applicable
statutory maximum); *Kurcharski v. Woodford,* 2008 WL 1901001, *4 (N.D. Cal. 2008) ("We assume that
imposition of a restitution fine constitutes a criminal penalty within the meaning of *Apprendi.*")

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

1 | prescribed fine was $50,000 per day of the violation. *Id.* at 32. Rejecting an *Apprendi* challenge, the

2 | First Circuit concluded – based almost solely on the *Ice dicta* – that "the *Apprendi* rule does not apply to

3 | the imposition of statutorily prescribed fines." *Id.* at 22.

4 |     *Southern Union* does not aid the government for three reasons.

5 |     First, unlike *LaGrou* and *Pfaff, Southern Union* did not involve the alternative fines statute.

6 |     Second, the court merely said that *Apprendi* did not apply to *statutorily prescribed* fines. But the

7 | fines the government seeks to impose here under the alternative fines statute are well in excess of the

8 | statutorily prescribed fines. Indictment, ¶ 23 (purported gross gains or losses from alleged conspiracy

9 | were "at least $500,000,000.") The government gives no reason why *Southern Union* should be

10 | extended to *all* fines.

11 |     Third, even if the court's conclusion is read more broadly, the court's analysis of *Apprendi* and

12 | *Ice* is unsound. The court failed to recognize the historical basis for *Apprendi* and its progeny, the

13 | critical distinction between penalties within and outside the statutorily prescribed range, or the factual

14 | distinctions between *Apprendi* and *Ice*.

15 |     *LaGrou* and *Pfaff* are directly on point, involve the same statute at issue here, and correctly apply

16 | *Apprendi.*

17 |     In its Answering Brief filed on appeal in the Second Circuit on April 28, 2011 in *United States v.*

18 | *Smith,* et al. (10-0585 CR, etc.), the Government conceded that in light of *Pfaff,* the district court erred in

19 | imposing a $3 million fine pursuant to the alternative fine provision of Section 3571(d) on a defendant

20 | who pled guilty. The government agreed that *Apprendi* requires a jury finding as to profit and loss in

21 | order to impose a fine in excess of the statutory maximums stated in Section 3571. Government's Brief

22 | (Attached as Exhibit 10 hereto), pp. 322-24.

23 |     If the government obtains a conviction at trial, the calculation of gain or loss must be made by

24 | the jury to a beyond a reasonable doubt standard.

25 | **II.    CONCLUSION**

26 |     The government has made no showing that bifurcating this trial will save anyone – the court, the

27 | jury, the parties or the witnesses – any significant time or resources at all. Bifurcation should be denied,

28 |

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING

1  and the government's effort to exclude relevant economic evidence crucial to the defendants' cases

2  should be firmly rejected.

3        If the government seeks to impose a fine on any defendant in excess of the statutory maximums

4  set forth in the Sherman Act, *Apprendi* will require that the necessary facts be proven to the jury beyond

5  a reasonable doubt.

6        The government's motion should be denied.[10]

7  Dated: July 6, 2011                    NOSSAMAN LLP

8

9                              By:/s/ Christopher A. Nedeau
                                  Christopher A. Nedeau (No. 81297)
10

11                               50 California Street
                                 San Francisco, CA  94111
12                               Telephone: (415) 398-3600
                                 Facsimile: (415) 398-2438

13                               Attorneys for Defendants
                                 AU OPTRONICS CORPORATION and
14                               AU OPTRONICS CORPORATION AMERICA

15

16

17

18

19

20

21

22

23

24

---

[10]  Even if the government were correct that facts relating solely to gain or loss can be determined by the court rather than the jury – which it is not – the government's argument that the preponderance of the evidence standard would apply is incorrect.  If the government's gain or loss calculations had a disproportionate effect on the applicable fine, then the necessary facts must be proven to a clear and convincing standard. *United States v. Pike,* 473 F.3d 1053, 1057 (9th Cir. 2007); *United States v. Staten,* 466 F.3d 708, 718 (9th Cir. 2006); *United States v. Dare,* 425 F.3d 634, 642 (9th Cir. 2005).  Since the government is likely to seek a fine against AUO, should it obtain a conviction, of many times the $100,000,000 statutory maximum, the clear and convincing standard would apply.

OPPOSITION OF DEFENDANTS AU OPTRONICS CORPORATION AND AU OPTRONICS CORPORATION AMERICA
TO GOVERNMENT'S MOTION FOR BIFURCATION AND ORDER REGARDING FACT FINDING FOR SENTENCING