PETER K. HUSTON (Cal. Bar No. 150058)
MICHAEL L. SCOTT (Cal. Bar No. 165452)
HEATHER S. TEWKSBURY (Cal. Bar No. 222202)
E. KATE PATCHEN (N.Y. Reg. No. 41204634)
Antitrust Division
United States Department of Justice
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102-3478
Telephone:   (415) 436-6660
Facsimile:    (415) 436-6687
peter.huston@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. CR-09-0110 SI |
| | ) |
| v. | ) UNITED STATES' REPLY |
| | ) MEMORANDUM IN FURTHER |
| AU OPTRONICS CORPORATION; | ) SUPPORT OF PROPOSED JURY |
| AU OPTRONICS CORPORATION AMERICA; | ) INSTRUCTION REGARDING 18 |
| HSUAN BIN CHEN, aka H.B. CHEN; | ) U.S.C. § 3571(d) |
| HUI HSIUNG, aka KUMA; | ) |
| LAI JUH CHEN aka L. J. CHEN; | ) Pretrial Conf.: December 13, 2011 |
| SHIU LUNG LEUNG, aka CHAO-LUNG | ) Time:          3:30 p.m. |
| LIANG and STEVEN LEUNG; | ) Judge:        Hon. Susan Illston |
| BORLONG BAI, aka RICHARD BAI; | ) Place:        Courtroom 10, 19th Floor |
| TSANNRONG LEE, aka TSAN-JUNG LEE and | ) |
| HUBERT LEE; | ) Trial Date:   January 9, 2012 |
| CHENG YUAN LIN, aka C.Y. LIN; | ) |
| WEN JUN CHENG, aka TONY CHENG; and | ) |
| DUK MO KOO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT.......................................................................................................................3

I.      The FTAIA Does Not Bar a Gain Calculation Based on All Price-Fixed Panels...............3

II.     Gain on Sales of Panels Incorporated into Imported Products Should Be Included in the
        Gross Gain Even If the FTAIA Implies a Limit on Section 3571(d) .................................7

III.    The Gross Gain from a Conspiracy Offense Includes Every Conspirator's Gains.............8

IV.     The Rule of Lenity Does Not Apply Because There Is No "Grievous Ambiguity" .........11

V.      The Excessive Fines Clause Does Not Curb the Statutory Maximum Fine .....................12

 CONCLUSION.................................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Apprendi v. New Jersey,*
   530 U.S. 466 (2000).................................................................................. 1, 2, 10

*Arbaugh v. Y & Y Corp.,*
   546 U.S. 500 (2006)......................................................................................... 3

*F. Hoffman-LaRoche Ltd. v. Empagran S.A.,*
   542 U.S. 155 (2004)...................................................................................... 5, 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   MDL No. 1827, 2011 WL 4634031 (N.D. Cal. Oct. 5, 2011)............................... 3

*Oregon v. Ice,*
   555 U.S. 160 (2009)......................................................................................... 2

*Pasquantino v. United States,*
544 U.S. 349 (2005) ........................................................................................ 5

*Pinkerton v. United States,*
   328 U.S. 640 (1946)....................................................................................... 11

*Salinas v. United States,*
   522 U.S. 52 (1997)......................................................................................... 11

*Smith v. United States,*
   508 U.S. 223 (1993)....................................................................................... 12

*United States v. Acuna,*
   313 Fed. Appx. 283, 2009 WL 415592 (11th Cir. 2009)................................... 10

*United States v. Andreas,*
   1999 WL 116218 (N.D. Ill. Feb. 24, 1999) ............................................. 4, 9, 11

*United States v. AU Optronics,*
   2011 WL 1464858 (N.D. Cal. April 18, 2011).................................................. 8

*United States v. Bader,*
   No. 07-cr-00338, 2010 WL 2681707 (D. Colo. July 1, 2010)........................... 10

*United States v. Bajakajian,*
   524 U.S. 321 (1998)....................................................................................... 12

*United States v. Balsys,*
    524 U.S. 666 (1998) .................................................................................... 7

*United States v. Banuelos,*
    322 F.3d 700 (9th Cir. 2003) ..................................................................... 11

*United States v. Bourseau,*
    531 F.3d 1159 (9th Cir. 2008) ................................................................... 12

*United States v. Chusid,*
    372 F.3d 113 (2d Cir. 2004) ........................................................................ 9

*United States v. Endicott,*
    803 F.2d 506 (9th Cir. 1986) ....................................................................... 5

*United States v. Lazarenko,*
    564 F.3d 1026 (9th Cir. 2009) ..................................................................... 8

*United States v. LSL Biotechnologies,*
    379 F.3d 672 (9th Cir. 2004) ....................................................................... 3

*United States v. Mackby,*
    339 F.3d 1013 (9th Cir. 2003) ................................................................... 12

*United States v. O'Donnell,*
    608 F.3d 546 (9th Cir. 2010) ..................................................................... 12

*United States v. Pfaff,*
    619 F.3d 172 (2d Cir. 2010) ....................................................................... 10

*United States v. Richardson,*
    580 F.2d 946 (9th Cir. 1978) ....................................................................... 7

*United States v. Socony-Vacuum Oil Co.,*
    310 U.S. 150 (1940) .................................................................................... 10

*United States v. Southern Union,*
    630 F.3d 17 (1st Cir. 2010) .......................................................................... 2

*United States v. Wilder,*
    15 F.3d 1292 (5th Cir. 1994) ....................................................................... 9

**Statutes**

15 U.S.C. § 6a ................................................................................................ 2, 6

15 U.S.C. § 6a (1)(A), (2) ................................................................................ 6

15 U.S.C. § 1 ................................................................................................... 4

18 U.S.C. § 3571(b)(3) .................................................................................... 10

18 U.S.C. § 3571(d) ................................................................................. passim

18 U.S.C. § 3623(c)(1) (Supp. III 1985) ......................................................... 9

18 U.S.C. §§ 3553(a) and 3572(a) .............................................................. 2, 11

18 U.S.C. § 3553(a)(4) .................................................................................... 2

**Other Authorities**

Richard A. Posner, *An Economic Theory of Criminal Law*,
    85 Colum. L. Rev. 1193 (1985) ................................................................ 1

Article 23(2), Counsel Regulation (EC) No 1/2003; Guidelines on the Method of Setting Fines
    Imposed pursuant to Article 23(2)(a) of Regulation No 1/2003, at ¶ 32, *available at*
    http://eurlex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:52006XC0901(01):
    EN:NOT ....................................................................................................... 7

H.R. Rep. No. 100-390, at 4 (1987) ................................................................ 9

U.S.S.G. §2R1.1(b)(2), (d)(1) ......................................................................... 2

80 U.S.L.W. 3059 (U.S. Nov. 28, 2011) (No. 11-94) ...................................... 2

**INTRODUCTION**

AUO's opposition to the United States' proposed instruction on gross gain under the Alternative Fines Act, 18 U.S.C. § 3571(d), provides no valid reason not to give the instruction, nor does it offer an alternative instruction. Its opposition is based on a seriously flawed interpretation of Section 3571(d). That statute is not a tax statute to collect a percentage of gains, incomes, or sales. *See* Defendants' Opposition to Government's Motion for Preliminary Instruction re Overcharge Theory ("Defs.' Opp.") 7 & n.2. Nor is it a civil damages or restitution statute to compensate for anyone's injuries. *Cf.* Defs.' Opp. 7. Section 3571(d) is a penal statute that authorizes sentencing courts to impose criminal fines commensurate with the gravity of the criminal offense. When the ordinary statutory maximum fine for an offense does not adequately reflect the gravity of the offense in light of the gain or loss it caused, Section 3571(d) provides an alternative maximum fine up to twice the gross pecuniary gain or loss from the offense. Absent this alternative fine, the penological objective of deterrence is unachievable when the gain from the offense exceeds the ordinary maximum. In that event, potential criminals, especially corporations which cannot be imprisoned, could treat such criminal fines as merely a cost of doing business, like a tax, for their felonious conduct. Criminal sanctions "are not really prices designed to ration the activity; the purpose so far as possible is to extirpate it." Richard A. Posner, *An Economic Theory of Criminal Law*, 85 Colum. L. Rev. 1193, 1215 (1985).

In this case, even the Sherman Act's $100 million maximum fine for corporations would not reflect the gravity of the offense or achieve the deterrence objective if, as the government intends to prove, the charged offense yielded its participants at least a $500 million gain. In fact, the government's proof will show commerce in the tens of billions of dollars was affected and that the conspiracy's gain may have exceeded $10 billion.

But such proof does not mean, as AUO contends, that the government is seeking a sentence in excess of $20 billion. *See* Defs. Opp. 13. Again, AUO misinterprets Section 3571. Since the Court ruled that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to Section

1

3571(d),[1] the gain is limited to what the grand jury found in the indictment: "defendants [AUO] and [AUOA] and their coconspirators derived gross gains of at least $500,000,000." Superseding Indictment ¶ 23. "Thus, based solely upon the Superseding Indictment's allegations, the government could seek a fine in this case of up to $1 billion against AUO." July 18th Order 2. Moreover, Section 3571(d) sets only the maximum fine, not the fine the government must seek or the Court must impose. Within the maximum, the Court must impose a fine based on the factors in 18 U.S.C. §§ 3553(a) and 3572(a). One of those factors is the advisory fine range provided by the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"), *see* 18 U.S.C. § 3553(a)(4), and that range is based on the volume of affected commerce "attributable to the defendant" alone, U.S.S.G. §2R1.1(b)(2), (d)(1). The government intends to seek a sentence within the guidelines range, which the government expects to be above the $100 million provided by the Sherman Act, hence the use of the Alternative Fines Act.

Contrary to AUO's claim, the Section 3571(d) "gain from the offense" must include the gain to all participants in the charged conspiracy from their worldwide sales of price-fixed thin-film transistor liquid crystal display panels ("TFT-LCDs"). AUO's argument that the Section 3571(d) calculation is limited to only the gain from the approximately $200 million in price-fixed TFT-LCDs AUO billed and shipped to the United States, *see* Defs.' Opp. 12-13, is based on a misinterpretation of both Section 3571(d) and the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a.[2] Nothing in Section 3571(d) supports that limitation, nor does anything in either statute suggest that the FTAIA alters the meaning of Section 3571(d). Even if

---

[1]    Order Denying United States' Motion for Order Regarding Fact Finding for Sentencing under 18 U.S.C. § 3571(d) 6 (N.D. Cal. July 18, 2011) (Dkt. 356) ("July 18th Order"). The Court was "unconvinced" by the dicta in *Oregon v. Ice*, 555 U.S. 160, 171 (2009), and the holding in *United States v. Southern Union*, 630 F.3d 17, 33-36 (1st Cir. 2010), that *Apprendi* does not apply to criminal fines. July 18th Order 5. Last week, the Supreme Court granted *certiorari* in *Southern Union* to decide whether *Apprendi* applies to the imposition of criminal fines. *See* 80 U.S.L.W. 3059 (U.S. Nov. 28, 2011) (No. 11-94).

[2]    The government recently explained AUO's many errors in interpreting the FTAIA. *See* United States' Opposition to Defendants' Proposed Preliminary Jury Instructions on the Elements of the Offense; United States' Proposed Alternative Preliminary Instructions ("Gov't FTAIA Opp.") (Dkt. 434).

2

1  the FTAIA were applicable to this case, it leaves the Sherman Act applicable to the charged

2  conspiracy.  Consequently, under the plain language of Section 3571(d), the maximum fine is

3  twice the gross pecuniary gain from the offense—the price-fixing conspiracy—without any

4  limitations.  But even if the Court only considered the import commerce involved or affected,

5  such commerce would go well beyond the approximately $200 million in AUO panel imports.

6  In that case, the calculation would include all the imports involved—every price-fixed panel sold

7  in or for delivery to the United States by AUO or its coconspirators—and all the imports

8  affected—every finished product sold in or for delivery to the United States that incorporates a

9  price-fixed panel sold by AUO and its coconspirators.  Neither the rule of lenity nor the

10  Excessive Fines Clause supports a different interpretation of Section 3571(d).

**ARGUMENT**

**I.    The FTAIA Does Not Bar a Gain Calculation Based on All Price-Fixed Panels**

13  AUO's principal argument that the FTAIA limits the gross gain from the offense under

14  Section 3571(d) is meritless.  The government has previously explained why the FTAIA does not

15  apply in this case, *see* Gov't FTAIA Opp. 2-4, but even assuming it applies, it does not preclude

16  basing the gain from the offense on the whole gain from the price-fixing conspiracy, including

17  all sales of price-fixed TFT-LCDs worldwide.  Whether or not the FTAIA implicates subject

18  matter jurisdiction,[3] the statute leaves the Sherman Act fully applicable to the charged offense if

19  the conduct -- that is, the conspiratorial agreement and all acts in furtherance of it -- either

20  involved import commerce or affected import commerce.  *See* Gov't FTAIA Opp. 9 (explaining

21  that term conduct in the FTAIA refers to the conspiratorial agreement and any acts in furtherance

22  of it by any conspirator).  In this case, the conduct did both.  The conduct involved import

[3]    As previously noted, *see* Gov't FTAIA Opp. 4 n.2, we recognize that this Court recently concluded that "the FTAIA does not implicate the subject matter jurisdiction of the federal courts," believing that the Ninth Circuit's treatment of the statute as test of subject-matter jurisdiction in *United States v. LSL Biotechnologies*, 379 F.3d 672, 679-80 & n.5 (9th Cir. 2004), "cannot withstand" *Arbaugh v. Y & Y Corp.*, 546 U.S. 500, 514 (2006).  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL 4634031, at *5 (N.D. Cal. Oct. 5, 2011).  As explained above, however, whether  treated as a merits or jurisdictional question, the FTAIA does not restrict the meaning of Section 3571(d)'s gain from the offense.

US' REPLY IN SUPPORT OF PROPOSED JURY INSTRUCTION RE 18 U.S.C. § 3571(d)
[CR-09-0110 SI]

1    commerce in that AUO and its coconspirators fixed the price of TFT-LCDs sold in or for

2    delivery to the United States.  *See* Gov't FTAIA Opp. 10-13.  And the conduct also directly,

3    substantially, and reasonably foreseeably affected import commerce in that the conspirators fixed

4    the price of TFT-LCDs incorporated into finished products like notebook computers, desktop

5    computer monitors, and televisions, which had a reasonably foreseeable, not insignificant effect

6    on commerce in those finished products sold in or for delivery to the United States.  *Id.* at 14-16.

7    Once the government establishes the FTAIA "element"—that the conduct involved or affected

8    import commerce—the FTAIA has no consequence to the Section 3571(d) analysis because the

9    FTAIA does not operate to make the Sherman Act inapplicable or otherwise alter the content of

10   Section 1, 15 U.S.C. § 1.  *Cf. United States v. Andreas*, 1999 WL 116218, at *3 (N.D. Ill. Feb.

11   24, 1999) (recognizing Section 3571(d) is "a catch-all fine provision applied to all criminal

12   statutes" which should not be interpreted based on antitrust sentencing guidelines).

13        Since the Sherman Act applies to the conduct, Section 3571(d) asks what was the

14   "pecuniary gain from the offense."  18 U.S.C. 3571(d).  The indictment charges a "conspiracy to

15   suppress and eliminate competition by fixing the prices of [TFT-LCD panels] in the United

16   States and elsewhere" and alleges that AUO and its coconspirators "agree[d] to fix the prices of

17   TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions in the

18   United States and elsewhere."  Superseding Indictment ¶¶ 2-3.  Under the plain language of

19   Section 3571(d), twice the gross gain from that conspiracy, which includes gain on price-fixed

20   TFT-LCDs sold "in the United States and elsewhere," supplies the statutory maximum.  There is

21   no basis in the language of Section 3571(d) to split the charged conspiracy into pieces and

22   consider only part of the gain from the offense.  Indeed, doing so would subvert the very purpose

23   of Section 3571(d).  A gutted Section 3571(d) risks companies rationalizing price fixing because

24   the fine could not exceed the gain from the offense.

25        Calculating the whole gain from the offense does not transform the United States into an

26   imperial regulator of the world's economy or conflict with principles of prescriptive comity, as

27

28

US' REPLY IN SUPPORT OF PROPOSED JURY INSTRUCTION RE 18 U.S.C. § 3571(d)
[CR-09-0110 SI]

AUO hypothesizes.  *See* Defs.' Opp. 9-12.[4]  To the contrary, in this case, Section 3571(d) simply sets a maximum pecuniary penalty that reflects the gravity of a price-fixing conspiracy that is neither extraterritorial nor put beyond the reach of the Sherman Act by the FTAIA.  As this Court previously recognized, the conspiracy is not wholly foreign conduct, but rather includes overt acts in furtherance by its participants within U.S. territory.  *See* Order Denying Defendants' Motion to Dismiss Indictment 4-5 ("April 18th Order") (Dkt. 287) (N.D. Cal. April 18, 2011); Gov't FTAIA Opp. 18-20.  Thus, there can be no territory-based bar to the prosecution and punishment of the charged conspiracy.[5]  *See also United States v. Endicott*, 803 F.2d 506, 514 (9th Cir. 1986) ("Any conspiratorial act occurring outside the United States is within United States jurisdiction if an overt act in furtherance of the conspiracy occurs in this country.").  Prosecuting and punishing the charged conspiracy is also fully consistent with the FTAIA.  *See* April 18th Order 7-8; Gov't FTAIA Opp. 8-16.  The United States has every right to seek criminal punishment for this conduct, and it also has every reason to do so: the conspiracy took place, in part, in the United States and harmed U.S. consumers and businesses.

AUO's reliance on *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004), and other civil damages cases is unavailing.  In *Empagran*, the Supreme Court considered whether the damages claims of foreign plaintiffs from foreign purchases fit the FTAIA's effects exception that applies "where the conduct (1) has a 'direct, substantial, and reasonably

---

[4]     To the extent AUO argues that the Court should bar the United States' pursuit of a Section 3571(d) calculation based on worldwide sales because it risks upsetting this country's relations with foreign countries, the argument must be rejected.  "In our system of government, the Executive," not the Judiciary, "is the sole organ of the federal government in the field of international relations."  *Pasquantino v. United States*, 544 U.S. 349, 369 (2005) (citation omitted).  The Executive Branch "has ample authority and competence to manage" its international relationships, and its pursuit here of a gross gain calculation using the gain from sales worldwide represents an assessment that it poses "little danger of causing international friction."  *Id.* at 369.  As in *Pasquantino*, that assessment should be respected.

[5]     AUO's observation that the application of the Sherman Act depends on the situs of effects, not the situs of conduct, however true, has no special consequence in this case.  As previously explained elsewhere, *see* Gov't FTAIA Opp. 17 & note 11, the government will prove, as it must in every Sherman Act case, the requisite effect on interstate or foreign trade and commerce.

5

1   foreseeable effect' on domestic commerce, and (2) 'such effect gives rise to a [Sherman Act]

2   claim'" 542 U.S. at 159 (quoting 15 U.S.C. § 6a (1)(A), (2)).  In *Empagran*, the Supreme Court

3   interpreted the second part of that exception in light of comity and history.  It concluded that "the

4   exception does not apply where the plaintiff's claim rests solely on the independent foreign

5   harm" because "gives rise to a claim" must mean "gives rise to the plaintiff's claim."  *Id.* at 159,

6   174.  Otherwise, foreign plaintiffs making purchases abroad from foreign sellers could recover

7   antitrust damages in federal courts based on a foreign injury entirely independent of any U.S.

8   injury.  In effect, that would turn the federal courts into adjudicators of disputes between foreign

9   purchasers and sellers absent any connection to the United States.

10          In contrast, the criminal prosecution here is not to resolve private disputes or compensate

11  such foreign purchasers.  While AUO may apparently see no difference between a claim by

12  private plaintiffs seeking damages and a prosecution brought by the government, Defs.' Opp. 4,

13  7, the Supreme Court in *Empagran* observed a difference.  "A Government plaintiff, unlike a

14  private plaintiff, must seek to obtain relief necessary to protect the public from further

15  anticompetitive conduct and to redress anticompetitive harm."  542 U.S. at 170.  "Private

16  plaintiffs, by way of contrast, are far less likely to be able to secure broad relief."  *Id.* at 171.

17  These observations are particularly true in a criminal prosecution where the government seeks to

18  protect the public by deterring the price-fixing conduct through the imprisonment of individual

19  participants and the imposition of substantial fines on the corporate participants.  While private

20  damages claims require injury to the plaintiff's business or property proximately caused by the

21  violation, a government criminal prosecution does not arise out of any effect nor require any

22  injury.  *See* Gov't FTAIA Opp. 14 n.10.  Thus, while any foreign plaintiffs whose claims, like

23  those in *Empagran*, rest solely on an independent foreign harm would not be able to recover

24  damages from AUO and its coconspirators under the Sherman Act for TFT-LCD purchases

25  abroad, the Sherman Act remains applicable to the conduct in the context of the criminal

26  prosecution.  As the Supreme Court explained in *Empagran*, the Sherman Act "can apply and not

27  apply to the same conduct, depending upon other circumstances; and those other circumstances

28  may include the nature of the lawsuit (or of the related underlying harm)."  542 U.S. at 173.  The

6

government is not invoking Section 3571(d) to compensate foreign purchasers, but rather to set the maximum fine based on the entire gain from the offense to punish AUO adequately and deter future price-fixing conspiracies.

Lastly, AUO cites the European Commission's fines on five TFT-LCD manufacturers to support its contention that a maximum U.S. fine determination based on gain from worldwide sales overreaches. But the European Commission determines its own maximum fine on an even broader basis: the infringing firm's worldwide annual turnover, including turnover unrelated to the infringing conduct.[6] In any event, nothing in Section 3571(d) even remotely suggests that the maximum fine should be discounted by any civil or criminal fines imposed by other sovereigns, whether foreign governments or U.S. states. *Cf. United States v. Richardson,* 580 F.2d 946, 947 (9th Cir. 1978) (holding that Double Jeopardy Clause does not bar U.S. prosecution following prosecution by foreign sovereign); *United States v. Balsys*, 524 U.S. 666, 669 (1998) (holding that concern with foreign prosecution is beyond the scope of the Fifth Amendment's Self-Incrimination Clause).

## II.     Gain on Sales of Panels Incorporated into Imported Products Should Be Included in the Gross Gain Even If the FTAIA Implies a Limit on Section 3571(d)

Even if the FTAIA somehow limits the gross gain from the offense under Section 3571(d),[7] AUO is wrong to suggest that the gross gain from the offense is limited to its gain on approximately $200 million in sales of TFT-LCDs AUO billed and shipped to the United States (Defs. Opp. 12-13). The FTAIA contains both an exception for conduct involving import commerce and a second exception for conduct that affects import or interstate commerce. Thus,

---

[6]     *See* Article 23(2), Counsel Regulation (EC) No 1/2003; Guidelines on the Method of Setting Fines Imposed pursuant to Article 23(2)(a) of Regulation No 1/2003, at ¶ 32, *available at* http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:52006XC0901(01):EN:NOT.

[7]     If the Court rules that the FTAIA implies that the gross gain from the offense is not that from worldwide sales, the government will respectfully disagree and maintain its objection, but propose an alternative jury instruction on gross gain from the offense consistent with that ruling and a proper understanding of the FTAIA, as explained above and in the government's opposition to AUO's proposed preliminary instructions on the elements, *see* Gov't FTAIA Opp. 6-7.

US' REPLY IN SUPPORT OF PROPOSED JURY INSTRUCTION RE 18 U.S.C. § 3571(d)
[CR-09-0110 SI]

1    AUO's gain on the several billion dollars in sales of TFT-LCDs that were incorporated into

2    finished products sold in or for delivery to the United States should also be included because the

3    conduct directly, substantially, and reasonably foreseeably affected import and interstate

4    commerce in those finished products. *See* Gov't FTAIA Opp. 14-16. Moreover, as explained

5    below, the gross gain from the offense should also include gains on AUO's coconspirators' sales

6    of TFT-LCDs and TFT-LCD-incorporating products sold in or for delivery to the United States.

7    AUO and its coconspirators sold tens of billions of dollars of such TFT-LCDs.

8          AUO apparently believes that the FTAIA effect exception does not apply here because

9    the Superseding Indictment does not allege that the charged conspiracy had a direct, substantial,

10    and reasonably foreseeable effect on U.S. commerce. Defs.' Opp. 3. But "read in its entirety,

11    construed according to common sense, and interpreted to include facts which are necessarily

12    implied," *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009), the Superseding

13    Indictment alleges just such an effect. *See* Superseding Indictment ¶ 3 (alleging a conspiracy

14    that "consisted of a continuing agreement, understanding, and concert of action among the

15    defendants and other coconspirators, the substantial terms of which were to agree to fix the

16    prices of TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions

17    in the United States and elsewhere"); *id.* ¶¶ 4-5, 17-20; *see also United States v. AU Optronics*,

18    2011 WL 1464858 *3 (N.D. Cal. April 18, 2011) (concluding that the "factual allegations in the

19    superseding indictment are sufficient to establish both an intended and substantial effect on

20    commerce in the United States").

21    **III.    The Gross Gain from a Conspiracy Offense Includes Every Conspirator's Gains**

22          AUO argues that the gain under Section 3571(d) is limited to gain on its own panel sales

23    because either Section 3571(d) limits gain to defendants' gain or because the statute limits gain

24    to that caused by AUO's conduct alone. *See* Defs.' Opp. 14-16. In either case, that argument

25    conflicts with the language of Section 3571(d). That language makes clear that the gross gain

26    from the offense is not limited to the defendant's gain but includes anyone's gain: "if any person

27    derives pecuniary gain from the offense . . . the defendant may be fined not more than . . . twice

28    the gross gain." 18 U.S.C. § 3571(d). AUO's reliance on the language and legislative history of

8

a predecessor alternative fines statute is puzzling.  Defs.' Opp. 15.  That earlier statute provided

that "[i]f the defendant derives pecuniary gain from the offense . . . the defendant may be fined

not more than . . . twice the gross gain."  18 U.S.C. § 3623(c)(1) (Supp. III 1985).  The

conspicuous difference between the two statutes exposes the flaw in AUO's argument.  In

enacting Section 3571(d), Congress changed "defendant" to "any person" so that the gain from

the offense was not limited to the defendant's gain.  Section 3571(d)'s legislative history

confirms this interpretation:

> New section 3571(d) carries forward, with a modification, the provision of
> current law authorizing an alternative fine of twice the gross gain or gross
> loss resulting from an offense.  Current law authorizes such a fine,
> notwithstanding the otherwise applicable fine limit, if the defendant derives
> pecuniary gain from the offense or if the offense results in pecuniary loss to
> another person.  New section 3571(d) amends this provision by authorizing
> the court to impose such an alternative fine *if a person other than the*
> *defendant* derives pecuniary gain from the offense. Thus, if the defendant
> knows or intends that his conduct will benefit *another person* financially,
> the court can measure the fine imposed based on twice that benefit.

H.R. Rep. No. 100-390, at 4 (1987), reprinted in 1987 U.S.C.C.A.N. 2137, 2142 (emphasis

added); *see also Andreas*, 1999 WL 116218, at *2 ("Congress amended subsection (d) to ensure

that criminal defendants like Andreas would be liable for their conduct even if they intended to

enrich a third party like ADM.").  The statutory language also makes clear that it is the gain from

the "offense," not just the defendant's specific conduct in furtherance of the offense.

   AUO points to small fragments from five cases claiming they interpreted Section 3571(d)

to limit the gross gain to the defendant's own gain or the gain resulting "from the defendants'

own actions, and not by those of all members of the purported conspiracy."  Defs.' Opp. 14-15

(emphasis removed).  But none of the cited cases address the issue, let alone provide a persuasive

analysis to support AUO's argument.  For example, in *United States v. Wilder*, the $4 million

fine imposed was "permitted by § 3571(d) because Wilder's criminal act resulted in pecuniary

losses to other persons exceeding five million dollars," and thus there was no reason to consider

whether his coconspirator's acts resulted in any additional loss.  15 F.3d 1292, 1301 (5th Cir.

1994).  Similarly, the fine in *United States v. Chusid*, 372 F.3d 113 (2d Cir. 2004), was only

9

1  $250,000, and thus resort to Section 3571(d) was entirely unnecessary.  *See* 18 U.S.C.

2  § 3571(b)(3) (authorizing $250,000 fine).  *United States v. Acuna*, 313 Fed. Appx. 283, 2009 WL

3  415592, at *15-16 (11th Cir. 2009), and *United States v. Bader*, No. 07-cr-00338, 2010 WL

4  2681707 (D. Colo. July 1, 2010), did not involve a criminal fine pursuant to Section 3571(d), but

5  rather forfeiture orders under other statutes.

6      While *United States v. Pfaff*, 619 F.3d 172 (2d Cir. 2010) (per curiam), has language

7  superficially supporting AUO's suggested approach of tracing the gain or loss to defendants'

8  own conduct, it did not hold that the gain must be so traced.  Rather, in the course of vacating

9  one defendant's fine for violating *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Second

10  Circuit observed that the jury had "made no findings as to the pecuniary gain or loss caused by

11  his conduct."  619 F.3d at 175.  But nothing in the opinion suggests any considered contention

12  that gain caused by coconspirators' conduct should not have been included; there simply was no

13  gain finding by the jury at all.  Elsewhere in *Pfaff*, the court more precisely observes that Section

14  3571(d) authorizes a fine up to "twice the gross pecuniary loss caused by, or gain derived from,

15  the defendant's offenses."  *Id.* at 174.  True, the gain from the charged offense (or offenses) is

16  the relevant measure, and when the charged offense is a conspiracy, that gain includes the gain to

17  all the coconspirators from the conspiracy, not merely the gain from the defendant's overt acts.

18      Moreover, in a conspiracy case, AUO's approach is unworkable and contrary to bedrock

19  principles of conspiracy law.  In many conspiracy cases it is difficult or impossible to trace the

20  gain or loss attributable to only one participant's acts in furtherance because the gain or loss is

21  the result of numerous interdependent acts of multiple participants.  This is particularly true in a

22  price-fixing conspiracy where conspirators can only reap the benefit of sales at inflated prices

23  because their coconspirators are refusing to sell below the fixed price.  This concerted action is

24  the crux of price fixing.  Tracing the gain or loss to a specific coconspirator's conduct is not only

25  sometimes impossible, but fortunately always unnecessary.  The Supreme Court has long

26  recognized that "a conspiracy is a partnership in crime; and an 'overt act of one partner may be

27  the act of all.'"  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-54 (1940).  Thus,

28  one participant in a conspiracy is liable for the foreseeable acts of his coconspirators in

10

furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *Salinas v. United States*, 522 U.S. 52, 64 (1997). Nothing in Section 3571(d) changes this analysis. To the contrary, its focus on the gain or loss from the offense fully justifies including all the gains or losses resulting from the price-fixing conspiracy, not just those realized by AUO.[8]

For the same reason, the argument that Section 3571(d) is inapplicable to AUOA because the subsidiary had no sales of its own, Defs.' Opp. 16-17, is meritless. As a participant in the conspiracy, AUOA faces a statutory maximum fine up to twice the gross gain from the charged conspiracy, which includes the gain to all its participants. Within that maximum, AUOA's actual fine, if it is convicted, will be based on the factors in 18 U.S.C. §§ 3553(a) and 3572(a), including the advisory sentencing guidelines, not Section 3571(d).

**IV.    The Rule of Lenity Does Not Apply Because There Is No "Grievous Ambiguity"**

AUO invokes the rule of lenity because the government has not previously litigated the application of Section 3571(d) in a criminal antitrust case. Defs.' Opp. 16. There is a first time for everything, yet the rule of lenity does not always apply.[9] In fact, the rule "does not . . . apply

---

[8]    The same principle applies in the analogous context of a drug distribution conspiracy where the statutory maximum term of imprisonment depends on the quantity of drug distributed. A defendant's statutory maximum sentence is based not only on the drugs distributed as a result of his own conduct, but rather on the quantity of drugs that falls within the scope of the defendant's agreement with his coconspirators or was reasonably foreseeable to the defendant. *See United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003). By comparison, AUO is responsible for gain within its agreement with the coconspiring panel producers or that was reasonably foreseeable, which, in this case, is the total gain to those coconspirators from the sale of price-fixed panels worldwide.

[9]    The government has litigated Section 3571(d) in a criminal antitrust case. In *United States v. Andreas*, the government sought a $25 million fine for Andreas based on Section 3571(d) because the Sherman Act's statutory maximum at the time, $350,000, did not reflect the gravity of the lysine price-fixing conspiracy, which was "estimated to have netted the conspirators a total of $460 million worth of sales at an inflated price." 1999 WL 116218, at *1. The court agreed and ordered an evidentiary hearing "to determine the gain/loss attributable to the lysine conspiracy." *Id.* at *4. "Congress saw fit not to exempt the Sherman Act from § 3571(d) and the court cannot and will not create one now." *Id.* at *2. The "opposite result would not only contravene the plain meaning and legislative history of § 3571, but would undermine the broad liability envisioned by the Sherman Act." *Id.*

11

in the absence of a 'grievous ambiguity,' that requires us to 'guess as to what Congress intended.'" *United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1837 (2011) (citations omitted). AUO does not identify any ambiguous terms in Section 3571(d), and there are none. Section 3571(d)'s "pecuniary gain from the offense" is unambiguous and rightly includes all the gain from the offense. Anything less would undermine the very purpose of Section 3571(d). And there is no need to guess whether the gain is limited to just the defendant's gain because Congress used the term "any person," rather than "defendant," to answer that question. *See supra* Section III. AUO's advancement of a narrower interpretation with no basis in the statutory language does not create an ambiguity. *See Smith v. United States*, 508 U.S. 223, 239 (1993) ("The mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable.").

## V. The Excessive Fines Clause Does Not Curb the Statutory Maximum Fine

AUO argues that Section 3571(d) "must be construed as being limited to United States 'import trade or commerce,' as provided in the FTAIA" because "the Government's interpretation of the statute would render it unconstitutional pursuant to the Excessive Fines Clause of the Eighth Amendment" since the government is seeking a fine of $24.6 billion, which is many times the "less than $200 million" in TFT-LCDs AUO billed and shipped to the United States. Defs.' Opp. 12. As an initial matter, the Excessive Fines Clause applies to the actual fine imposed, not the maximum fine permitted. *United States v. Mackby*, 339 F.3d 1013, 1017 (9th Cir. 2003). Any analysis under this clause requires an evaluation of the gravity of the offense in light of a variety of factors. *United States v. Bourseau*, 531 F.3d 1159, 1173 (9th Cir. 2008). Making that evaluation prior to trial is unwise and unnecessary. So even if Section 3571(d) might authorize a grossly disproportional fine in some peculiar case, the sentencing court can always impose a lesser, constitutional fine in light of its evaluation of the offense's gravity.

Moreover, a fine is only unconstitutional under this clause if it is "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). It is hard to imagine how a fine only twice the gain or loss from the offense could be grossly disproportional to the gravity of the offense. *See Mackby*, 339 F.3d at 1017-18 (holding

12

that $729,454.92 judgment does not violate Excessive Fines Clause on assumption that sentencing guidelines loss was $58,151.46).

Lastly, of course, the government is not seeking a $24.6 billion fine. It intends to seek a fine within the range advised by the Guidelines up to the statutory maximum. Because the Indictment alleged a $500 million gain, that statutory maximum, even under Section 3571(d), cannot exceed $1 billion. A fine in the high nine figures or even at $1 billion is hardly grossly disproportional to an offense that gained its participants billions of dollars and affected tens of billions of dollars of TFT-LCDs and finished products sold in or for delivery to the United States.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court give the government's proposed jury instruction on Section 3571(d) at the outset of the case.

Dated: December 5, 2011                   Respectfully submitted,


                                          /s/ Peter K. Huston
                                          Peter K. Huston
                                          Antitrust Division
                                          U.S. Department of Justice

13